Horstblower, C. J.,
dissenting. There is no dispute about facts in this case. They are all admitted ; and the only question is, whether an actual payment made in good faith, by a surviving obligor at a period when he was both legally and morally bound to pay, will, under the provisions of our statute, continue the bond in force, against the real and personal representatives of a deceased joint and several obligor, who died after the bond became due, and while it was in full force against him, so as to prevent such representatives from successfully setting up the statute of limitations, to an action brought against them on the bond, within sixteen years after such payment. In other words, whether a payment, bona fide made, by one obligor, is such a payment, as by our statute, will save an action against another obligor or his representatives, commenced within sixteen years after such payment ?
I regret very much, that I feel myself compelled, to give a different answer to this question, from that which has been given by two of my brethren. They have arrived at the conclusion to which they have come, by confounding, as I most respectfully apprehend, the common law and constructive doctrine of the courts in relation to promissory notes, with the provisions of the statute limiting actions on bonds and other specialties.
The courts in Westminster Hall as well as in this country, in derogation of the statute of limitations, have held a partial payment of a promissory note, or other simple contract debt, as evidence of a new promise, so as to avoid the operation of the statute. And they have carried this doctrine so far, as to hold that a part payment, by one of two or more joint and several promissors, will not only take the case out of the statute as against the others, but also as against their representatives, if the action is brought against them, within six years, after such payment made. Whitcomb v. Whiting, Dougl. 629; and the notes of the English and American annotators on that case, in Smith’s leading cases; Jackson v. Fairbanks, 2 H. Bl. 340; Perham v. Raynal et al. 2d Bingh. 306; in 9 Engl. com. law, 413; Brandham v. Wharton, 1 Barn. and Alder. 463; Burleigh v. adm’s. of Stott, 8 B. and C. 36; in 15 Engl. com. law, 151; Pease et al. v. Hunt, and al. 10 B. and C. 122; in 21 Engl. *282 com. law, 38; Aitkins v. Tredgold’s Exec’s. 2 B. and C. 23; in 9 Engl. com. law, 12; Slater’s Exec’s, v. Lawson, 1 Barn. and Adol. 396; in 20 Engl. com. law, 409; and 12 Petersd abr. 243, in note; and this court, in Bergen v. Davisson and Buckalow, argued in Sept. Term, 1843 but not yet reported, held the same doctrine. The jury in that case had found a verdict in favor of the plaintiff, and a motion was made for a rule to show cause, on the ground, that the Circuit Court had instructed the jury that a promise or a partial payment by one of the defendants, would take the case out of the statute as against the other defendant; but the rule was refused, per tot. cur.
In Aitkins v. Tredgold’s Executors, in Slater’s Executors v. Lawson, the general language of some of the former cases is qualified and restricted to promises or payments made by one joint and several promissor, in the life time of the other. In Aitkins v. Tredgold, the payment had been made by a surviving promissor, and it was held not to bind the Executors of the deceased promissor; and in Slater’s Executors v. Lawson it was decided, that a payment by the Executor of a deceased promissor would not take the case out of the statute as against the surviving promissor. And so too, in Burleigh v. Stott’s administrators, Lord Tenterden, C. J. laid emphasis on the payments having been made in the life time of Stott.
But I submit, that if all this mass of judicial legislation, with its doctrine of new and constructive promises, is applicable to and ought to have any influence in actions upon bonds under the provisions of our statute, and we are in this case to be governed by analogy to the law of promissory notes and simple contract debts, even then, upon the facts in this case, judgment ought to be rendered for the plaintiff; for, although the payment, (which at common law, is only evidence of a promise,) was made by Hardenbergh after the death of Bidleman, and would not therefore, upon the principle contended for, bind the representatives of the latter; yet the plaintiff is in possession of better evidence, than that of a mere constructive promise or admission of the debt arising from a partial payment by a co-obligor, or even by the defendants themselves. For the plaintiff produces here, a written acknowledgment of the debt, as late as the 15th *283 of May 1818, signed by one of the defendants, and promising a speedy settlement of the amount due; and the cases cited abundantly show, that a parol or written admission or promise, and even a partial payment, made by one of the heirs or executors of a deceased promissor, will take the case out of the statute as against them all; so far at least, as they may have assets to pay with.
But it is not pretended, that such written acknowledgment and promise can avail the plaintiff anything in this action. Nay, the promise in writing of the obligor himself, if he were now living, could do the plaintiff no good. Marston v. Seabury, Penn. R. 702; Ludlow v. Van Camp, 2 Halst. 113; Van Dyke v. Van Dyke, 3 Green, 289. Why then, spend our time, in inquiring what the law is in relation to promissory notes; or whether a part payment, or a promise by one joint and several promissor, will revive the note as against another promissor, or as against the executors of a deceased promissor; when in point of fact, so far as concerns this case, it is perfectly immaterial, whether such payment or promise will have that effect or not; for, suppose it were true that a partial payment by a surviving promissor or obligor, would revive the debt against the executors of a deceased promissor or obligor, if both stood upon common law principles; yet, what good would such constructive or implied promise do the plaintiff, since, as we have seen, according to the provisions of our statute, and the decisions of this court to which I have just referred, an express written acknowledgment of the debt, and promise to pay, by the obligor himself, would not save the bond from the bar created by the statute.
I have made these remarks to show, that the law of limitations in relation to promissory notes, can have no possible application to this case. It must, in my opinion, be settled upon the language of the statute itself. If that should not conduct us to safe and convenient results, let us refer the matter to the legislature, for such amendments as experience may suggest, and not involve the subject in such clouds and darkness, as will be found, upon a recurrence to the notes on Whitcomb v. Whiting, in Smith’s leading cases, to hang around the law of limitations, in regard to simple contract debts.
The language of our statute, (after directing, that every action *284 on a bond, &e. shall be commenced and sued within sixteen years next after the cause of such action shall have accrued, and not after,) is as follows : “ but if any payment shall have been made on any such specialty, within or after the said period of sixteen years, then an action instituted, on suoh specialty, within sixteen years, after such payment, shall be good and effectual in law.” Now, in view of this statute, let us ask ourselves, upon what ground courts of law have sustained actions of assumpsit, after the lapse of six years? Was it on the ground, that the defendant, or those whom he represents, have made a payment within the six years ? certainly not; but on the judicial notion, that a payment was an admission of the existence of the debt, and therefore constructively, evidence of a new promise, within the six years; and then the action is maintained on the ground of such new promise, and is supposed to have accrued, at the time such promise was made. But no such refinements can be resorted to in the case of bonds. The action must be brought within sixteen years, from the time it first accrued. When does an action accrue on a bond ? Manifestly, when by the terms of the condition the money is to be paid. Thus far, the statute is an absolute and invincible bar. But then, it provides, that if “ any payment” is made upon it, either within or after the period of sixteen years, an action may be instituted, and successfully prosecuted at any time, within sixteen years after such payment. It is then the payment on the bond, that avoids the statute ; not an implied or presumptive promise, raised up by construction of law, upon such payment; but the mere naked, simple fact, that a payment has been made, on the bond, within sixteen years before the action was commenced.
The question then is, what will constitute, a payment, within the meaning of the statute ? I answer, it must be an actual, bona fide payment, made by some person, legally or morally bound to pay at the time of doing so. I say, “ morally,” because, by the terms of the statute, a payment made, “ within or after ” the period of sixteen years from the time the bond became due, equally bars the operation of the statute. If therefore, twenty or thirty years have elapsed since the cause of action accrued, so that the obligor is not legally bound to pay; but in the exercise *285 of a good conscience, under a sense of moral obligation, he makes a payment, it will in my opinion, be such a payment as the statute contemplates, and as will avoid its operation ; not only, as against the person making the payment, but as against all persons, who were bound by the terms or legal effect of the original contract. If it was an actual, bona fide payment, made on the bond, we have no right to say that because it was not made by the defendants, they shall not be affected by it. This would be to add a new clause to the statute, and make it read that sixteen years should be.a bar, “ unless the party sued upon it, had made a payment thereon, within sixteen years before the action was commenced.” This we have no right to do.
Again, while the defence rested on presumption at the common law, the plaintiff might overthrow that presumption by proving payments actually made on the bond, in good faith, within the twenty years by any obligor or by his representatives.
Now the statute has so far altered the common- law, as to make sixteen years, not a presumptive, but a legal bar, except in certain cases. An admission of the debt, or a promise to pay it, within the twenty years, would overthrow the common law presumption; but such admission or promise will not obviate the statute. The legislature, however, have thought proper to declare that “ any payment ” made on the bond within sixteen years shall save the action from the operation of the statute.
If then a payment, made bona fide by one of several obligors, obviated the presumptive bar at common law, as to all the obligors •; by what authority shall we undertake to restrict the saving effect of such a payment, in the construction of this statute, so as to save the action, only as against the party who actually made the payment? In my opinion, the legislature, by making the mere fact of “a payment” the means of saving the action under the statute, intended to give to such “ payment,” the same effect it would have had at common law.
The meaning and intent of the statute is, that a bond shall be considered as paid off and satisfied, at the expiraiion ■ of sixteen, (instead of twenty) years after it has become due, unless one or more payments have been made upon it in the mean time. But why say that the mere fact of a partial payment, *286 shall take the bond out of the limitation created by the statute ? The answer is obvious; because such payment, at the time it was made, was a clear indication, nay, an unqualified admission, that the bond was in force, and that something still remained due upon it.
Yielding however to this proposition, it may be insisted, that the admission is made only by him, who makes .the partial payment. In answer to this, I remark, it will always be a question of fact, by whom and under what circumstances such payment •was made. In legal presumption, it will be a payment by all and for all the obligors and their respective representatives; and that presumption will stand, until.it be overcome by showing that it was the unlawful or unauthorized act of the individual making the payment, and done by him against the will, and in fraud of the rights of the other obligors.
The statute of limitations, in respect to simple contract debte, has no such saving clause in it, and yet, courts of justice have not only considered such payments, as admissions of the debt implying a new promise to pay and therefore avoiding the statute; but they have gone further and held that a payment by one promissor, was a payment for all and by all the promissors, and takes the case out of the statute of limitations, as against them all.
In Whitcomb v. Whiting, Lord Mansfield said: “ when cases of fraud appear, they will be determined upon their own circumstances. Payment by one is payment by all; the one acting virtually as agent for the rest; and in the same manner, an admission by one, is an admission by all, and the law raises a promise to pay when the debt is admitted to be due.” Such in fact is the uniform language of all the cases I have cited in the first part of this opinion. To quote from them all would be tedious and unnecessary.
If then in cases in which the statute has not given any saving effect to intermediate and partial payments, courts of law, in furtherance of justice, have held such payments, as amounting to admissions of the debt, and thereby taking the case out of the statute, not only as against the party making the payment, but as against all his co-promissors, why should this court, when *287 called upon to give a construction to a statute which declares that “any payment ” on the bond, shall obviate the bar, restrict those words, to mean any payment made by the defendant in the action ? Are not co-obligors as much agents for each other, and as much bound by each others lawful acts in reference to their common bond, as eo-promissors are ? If not, I cannot perceive the reason for the difference.
It is admitted, if I understand the opposite argument, that if Bidleman had been living, when the last payment was made by Hardenbergh, and which was within sixteen years before this action brought, then Bidleman would have been bound by it, and he or his representatives, might have been sued on the bond, at any time within sixteen years after such payment was made. But it is insisted, that as Bidleman was dead, before that payment was made; and as his death had severed the contract, such payment could not bind or in any way implicate his heirs or executors.
If we are to apply and be governed by the decisions in Burleigh v. Stott’s Administrators; Aitkins v. Tredgold’s Executors and Slater’s Executors v. Lawson, and decide this case upon the analogy of the common law decisions in actions upon promissory notes, then I admit the payment by Hardenbergh, after the death of Bidleman, did not avoid the operation of the 'statute, as against the representatives of the latter.
But, I think I have already shown that the case of bonds stands on a very different footing from that of promissory notes. In the latter case it is by judicial decisions only and as mere matter of construction, that payments operate as a bar to the statute ,• whereas in the case of specialties, the statute declares, that “any payment” shall save the action of the plaintiff without specifying by whom such payment must be made, or as against whom it shall have the saving effect.
Admitting, however, that the cases are analogous, and ought to be governed by the same rules, it is obvious to remark, that the decisions I have referred to on this point, have not the force of authority with us, and we therefore have no right to follow them any further than they bear the test of reason; and I confidently say that so far as they distinguish between the effect of *288 a payment made by a promissor in the life time of his co-promissor, and a payment made by a surviving promissor, (at least under the policy and provisions of our laws regulating the administration of estates,) they will not bear the test of reason.
The argument upon which that distinction is founded is this, that the death of a co-promissor severs the contract; the surviving promissor and the representatives of a deceased promissor are no longer jointly bound; and therefore the act of one ought not to bind or prejudice the other. Let us see how this is.
In the first place, it is not strictly correct to say, that a joint contract whether special or simple, is determined by the death of one of the contractors. The contract remains after such an event, precisely what it originally was when entered into. The death of one of the parties has not changed its legal character, either at law or in equity ; at law it has only changed the form of the remedy. The debt having, by the common law, survived exclusively against the survivor, he alone can be sued; but if the contract was joint only, the declaration must be on the joint contract and must set it out as such, and not as a several one; or else there would be a fatal variance between the record and the proof. But in equity the contract remains in full force against all the parties and their representatives; and will there be treated as a joint or several contract, according to the truth and equity of the case. Then again, by our statute Elm. Dig. 355, the representatives of a deceased joint debtor, are made liable in the same manner as the representatives of one jointly and severally bound-would be. The distinction, then, between a joint and a joint and several contract, in New Jersey, has ceased, except only, that .the surviving contractor and the representatives of a deceased one, cannot, at law, be sued in one action; but must be sued separately.
Now, in view of the law as thus stated, let us recur to the distinction between a payment in the lifetime, and a payment after the death of a joint or a joint and several contractor; (I say a joint, or a joint and several, because under our law, both stand on the same footing,) and test the reason and good sense of the rule.
I begin with admitting, that if upon the death of a co-contrac *289 tor, his heirs or personal representatives were to become individually liable in their own rights ; if it was to east upon them a new and personal contract, then clearly a payment by a surviving contractor ought not to affect them. But this is not so ; they are liable only in their representative capacity ; that is, the estate of their testator, or intestate in their hands and which they represent, is alone liable. It was his contract, binding his estate, not theirs. What then, is the legal effect and binding operation of a joint or a joint and several promissory note, or bond, upon the several promissors or obligors? Why it binds them personally and their respective estates after they are dead, for the payment of the money according to the terms of the contract. jNow then, I seriously ask, if a payment, made in good faith, by one promissor in the lifetime of his co-promissors, ought to be binding on them and their representatives, why ought not a like payment, after the death of one co-promissor, to bind his estate and take from it the benefit of the statute? He and his estate, were both bound by the promise •, and the part payment after his death, by a survivor, while it goes so far towards relieving that estate, only tends to continue its honest and just liability for the residue, without imposing any new burdens upon it, or those who represent it.
I will close this long opinion with one or two more remarks.
And, First: The construction contended for by the defendants, would make it necessary for the bond holder, to get a, payment directly from the hands and pockets of each obligor, within the sixteen years, or else put his bond in suit, altliough he is satisfied with the investment, and wishes it to remain ; and although the principal in the bond has regularly paid, and is willing to pay the interest as it accrues.
Again: If a co-obligor should make a payment on the bond, fifteen years and nine months after it became due, he would of course, if he was only a security, be entitled to be reimbursed by his principal, and might recover the money paid, in an action against him, if living, or against his representatives, if he is dead. But then, that payment would continue the bond in force against the security for sixteen years more; and if he after-wards, and while the bond so continues in force, either voluntarily *290 or by legal compulsion; pays the balance due upon it, shall he not have his remedy against the estate of his principal by suit,, against his representatives, because they or their testator had not made a direct payment on the bond for sixteen years ? And yet this must be so; or else we have the legal absurdity, that an obligor or his heirs or executors, may be sued for money which has been paid on a bond at a time, when the obligee could have maintained no, action against them, and when they were not bound to pay the debt, by reason of the statute of limitations.
Thirdly : If two are bound, and one only makes payments and continues to do so for fifteen years; and the other, or in case of his death, his representatives are then sued on the bond, may they not avail themselves of those payments, as so much paid on the bond in discharge as far as they go of their liability ? This I think cannot be denied; and yet by the doctrine contended for, if they had been sued one year later, they might have pleaded the statute in bar of the action, notwithstanding those payments had been made on the bond for their benefit and had so far satisfied the bond. Such a result, in my opinion, would be another legal absurdity. In the language of Willes Justice, in Whitcomb v. Whiting, “the defendant has had the advantage of the partial payment, and therefore must be bound by it.”
The argument ab inconvenienti cannot prevail, against so plain a statute provision, as that under consideration. The same inconvenience existed at the common law. Twenty years was only a presumptive bar; and if an executor-found a bond outstanding, he was bound to pay it, if Jie had assets, or hazard the consequences of not doing so. But now by the provisions of a statute in this state, the executor or administrator may get an order of the Orphan’s Court, limiting creditdrs, and be protected against any claims, not duly presented within the prescribed period. I am of opinion that the plaintiff ought to have judgment.
Judgment for the Defendants.
Neyius and Elmer, Justices,
gave no opinion; the former, had been engaged as counsel in the cause, while at the bar; the latter did not hear the argument.
Affirmed, 1 Zab. 677. Cited in Corlies v. Fleming, 1 Vr. 351.